**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

JUAN ROMAN, individually and on behalf of all
others similarly situated,

            Plaintiffs,

            vs.

WHEELS ON THE BUS INCORPORATED,
JAMES COHN, and ALVIN CHAMORRO

            Defendants.

Case No.:  1:21-cv-6377

**CLASS AND COLLECTIVE ACTION**
**COMPLAINT FOR DAMAGES,**
**RESTITUTION AND INJUNCTIVE**
**RELIEF**

**JURY TRIAL DEMAND**

Plaintiff, individually and on behalf of all others similarly situated, by and through his attorneys, The Law Office of Christopher Q. Davis, PLLC, alleges, upon personal knowledge and upon information and belief as to other matters, as follows:

**NATURE OF ACTION**

1.    This is a collective and class action brought by Individual and Representative Plaintiff Juan Roman ("Plaintiff") and all putative plaintiffs (collectively "Plaintiffs"), on behalf of themselves and on behalf of the proposed Collective and Classes identified below. Plaintiff and the members of the putative Collective and Classes were or are employed by Defendants Wheels on the Bus Incorporated ("WOTB" or "the Company" or "the Corporate Defendant") and James Cohn ("Cohn") and Alvin Chamorro ("Chamorro", together with Cohn referred to as the "Individual Defendants", and collectively the Individual Defendants and the Corporate Defendant are referred to as "Defendants") in the United States (collective claims) and New York (class claims) during the relevant Class and Collective Periods as "Delivery Drivers" who provided pre-packaged meal delivery services to the Company's clients.

2.    Plaintiffs and the putative Collective and Classes were affected by one or more of the Defendants' unlawful policies and practices, including at times misclassifying Delivery Drivers as "independent contractors", and regardless of classification, at all times compensating Delivery Drivers based on flat shift rates rather than the number of actual hours worked within a workweek. Through these policies and practices, Defendants unlawfully denied Plaintiff Roman and the putative Collective and Classes overtime premiums for all hours worked over forty (40) in a workweek, failed to reimburse or otherwise unlawfully deducted business expenses, failed to pay Plaintiffs on a weekly basis, and engaged in various other recordkeeping practices and notice failures that violated both federal and state laws.

3.    Plaintiffs are all similarly situated under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) and the Federal Rule of Civil Procedure 23 and have suffered the same violations pursuant to Defendants' common policies and practices.

4.    The Collective is made up of all persons who are or have been employed by Defendants as Delivery Drivers anywhere in the United States within the period of the past three years from this action's filing date through the date of the final disposition of this action (the "Collective Period") and who were subject to Defendants' unlawful policies and practices of: (i) misclassifying Delivery Drivers as independent contractors, rather than employees; (ii) paying Delivery Drivers a flat rate per shift, rather than paying them for actual hours worked within a workweek; (iii) failing to provide Delivery Drivers with any method or procedure for recording actual hours worked, resulting in Defendants' failure to pay the Collective their overtime premiums for all hours worked over forty during the Collective Period; and (iv) failing to maintain proper recordkeeping practices, all in violation of the FLSA.

5.    The Class(es) are made up of all persons who are or have been employed by

Defendants as Delivery Drivers in New York State within the period of six years prior to the filing date (the "Class Period") and who were subject to Defendants' aforementioned unlawful policies and practices resulting in the following violations of the NYLL: (i) failure to pay overtime premiums for all hours worked in excess of forty hours within a workweek, (ii) unlawful deductions from wages for business expenses, whether directly or indirectly by "separate transaction" kickbacks; (iii) failure to pay wages on a weekly basis, and not later than seven calendar days after the end of the week in which the wages were earned; (iv) failure to provide wage notices at the time of hiring; (v) the failure to provide accurate wage statements on each payday that includes the information required by the NYLL, including the actual number of hours worked during the pay period; and (vi) failing to maintain proper recordkeeping practices, all in violation of the NYLL.

6.      Plaintiffs seek relief for the Collective under the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201 *et seq*. and for the Classes pursuant to the applicable provisions of the New York Labor ("NYLL"), §§ 190 *et seq*., to remedy the Defendants' failure to pay all wages due and for recordkeeping failures, in addition to injunctive relief.

## **PARTIES**

7.      Individual and Representative Plaintiff Juan Roman was a Delivery Driver with WOTB from April 2020 through August 25, 2021. He presently, and at all relevant times, resides in Brooklyn, New York.

8.      Defendant WOTB is for-profit organization that, by and through various contractual relationship, is paid to deliver pre-packaged meals on a daily basis throughout New York City.

9.      Defendant WOTB a corporation incorporated under the laws of the State of New

York and registered to business as a domestic business corporation in the State of New York.

10.     Defendant WOTB maintains its principal place of business at 210 S. Fehr Way, Bay Shore, New York, 11706.

11.     Upon information and belief, WOTB has an annual gross volume of sales in excess of $500,000.

12.     Defendant Cohn, upon information and belief, is the President and CEO of WOTB and maintains his office and principal place of business at 210 S. Fehr Way, Bay Shore, New York, 11706.

13.     Upon information and belief, Defendant Cohn possesses and regularly exercises sufficient control over WOTB's day to day operations to be considered Plaintiffs' employer under the FLSA and NYLL.

14.     Defendant Cohn, upon information and belief, manages WOTB's financials, created the policies and practices that are the subject matter of this lawsuit, and exercises authority to hire and fire employees.

15.     Defendant Chamorro was management/supervisory level employee WOTB.

16.     Defendant Chamorro exercises sufficient control over WOTB's day to day operations to be considered Plaintiffs' employer under the FLSA and NYLL.

17.     Defendant Chamorro upon information and belief, manages WOTB's financials, created the policies and practices that are the subject matter of this lawsuit, and exercises authority to hire and fire employees.

18.     For example, Defendant Chamorro sent Plaintiffs their daily routes each evening, required confirmation of receipt of such daily route assignments, was present daily to manage employees, discipline employees, and was ultimately responsible for Plaintiff Roman's

termination.

19.     Based on the above, at all relevant times, each of the Defendants were the "employers" of Plaintiffs and members of the Collective and Class(es) under all applicable statutes.

## JURISDICTION & VENUE

20.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

21.     Specifically, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 207, *et seq*.

22.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

23.     Venue is proper in the United States District Court, Eastern District of New York pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to the action that is the subject of this action occurred in this District.

24.     This Court has personal jurisdiction over Defendant WOTB, because it is a domestic corporation with headquarters in New York, has substantial business operations in New York, and routinely transacts business in New York.

25.     This Court has personal jurisdiction over Defendant Cohn, because, upon information and belief, he lives and works in New York and routinely transacts business in New York.

26.     This Court has personal jurisdiction over Defendant Chamorro, because, upon information and belief, he lives and works in New York and routinely transacts business in New York.

## STATEMENT OF FACTS

27.    Plaintiff Roman and the members of the putative Collective and putative Classes are presently, or were formerly, employed by the Defendants as Delivery Drivers.

28.    WOTB provides pre-packaged meal delivery services throughout all of New York City.

29.    WOTB operated its food delivery program as part of the New York City Office of Emergency Management's ("NYCOEM") emergency rule establishing a temporary emergency food delivery program – GetFoodNYC – to ensure that certain New Yorkers facing food insecurity as a result of the COVID-19 public health emergency have adequate access to food.

30.    NYCOEM's program aims to feed New Yorkers facing food insecurity during the COVID-19 health emergency by paying companies designated by NYCOEM to employ drivers to deliver free meals to program participants.

31.    Upon information and belief, WOTB and/or Defendants had a contract (or contracts) with the City of New York to be a vendor for the GetFoodNYC program.

32.    As part of this contract, Defendants hired Delivery Drivers to provide the aforementioned food delivery services to participants in the GetFoodNYC program.

33.    Upon information and belief, Defendants have additional contracts for food delivery services, whether with NYC or other public or private agencies or companies.

34.    As a Delivery Driver for Defendants Plaintiff Roman spent at least 25% of his time engaged in physical labor, which included but was not limited to, loading and unloading hundreds of pre-packaged meals in and out of a minivan or SUV and carrying such pre-packaged meals into homes or apartment buildings.

35.    As such, Plaintiff Roman was a manual worker.

36.     Similar to Plaintiff Roman, all other Delivery Drivers employed by Defendants similarly spent more than 25% of their time engaged in physical labor that included, but was not limited to, loading and unloading pre-packaged meals in and out of vehicles.

37.     As such, Delivery Drivers are, similar to Plaintiff Roman, manual workers.

38.     During his entire employment with Defendants, Plaintiff Roman was paid on a bi-weekly basis.

39.     At all relevant times, Defendants had a uniform practice of paying all its Delivery Drivers on a bi-weekly basis, eight days following the end of the two-week pay period.

40.     Specifically, the pay periods ended on a Sunday, and Plaintiffs would be paid on the following Monday.

41.     By way of examples, for Plaintiff Roman's pay period ending September 13, 2020, his check was dated September 21, 2020; for the pay period ending on December 6, 2020, his check was dated December 14, 2020; for the pay period ending January 31, 2021, his check was dated February 8, 2021; and so on.

**Defendants Relationship To Plaintiffs**

42.     From on or about March 2020 until approximately June 2020, Defendants misclassified Plaintiff Roman, and all other Delivery Drivers, as independent contractors.

43.     Thereafter, from June 2020 until approximately April 2021, despite making no substantive changes to Plaintiffs' job duties, Defendants re-classified Plaintiff and all other Delivery Drivers, as W2 employees.

44.     At all times, from March 2020 until approximately April 2021, Defendants supplied all Delivery Drivers with vehicles by which to do their meal deliveries.

45.     Specifically, upon information and belief, Defendants had rented more than 50

minivans and SUVs, which they provided to their Delivery Drivers daily to perform their job duties.

46.    At one point during this period, however, in order to avoid having too many cars parked overnight at the catering facilities, Defendants offered Delivery Drivers the ability to take home their vehicles; however, this was done primarily for the convenience of Defendants so they would not have to park 50 or more vehicles at or around the catering facilities they had contracts with.

47.    For any Delivery Driver who took a vehicle home, Defendants took a deduction from their pay of $100 per paycheck for "insurance."

48.    Then, on or about April 2021, Defendants again re-classified Plaintiff and all other Delivery Drivers, switching them back to independent contractors.

49.    At this point, Defendants required Plaintiffs to have their own vehicles for deliveries and stopped paying for gas and tolls but otherwise changed nothing substantively about Plaintiffs' job duties or manner and means by which Defendants directed and controlled Plaintiffs' work.

50.    After becoming misclassified as independent contractors, in or about April 2021, Plaintiff Roman had to purchase a larger vehicle because the SUV he already owned was not large enough to load the volume of pre-packaged meals he delivered on a daily basis.

51.    During the times that Defendants (mis)classified Plaintiff Roman, and other similarly situated individuals in the role of "Delivery Drivers" as independent contractors, Defendants still retained and exercised the absolute right to control and direct the work of all Delivery Drivers.

52.    The nature of the services Plaintiffs performed, and the manner in which they

performed these services, created an employer-employee relationship, making them ***at all times***, "employees" within the meaning of the FLSA and the NYLL.

53.    For example, Defendants required Delivery Drivers to participate in a multi-day training upon hiring on how to perform all aspects of their job duties.

54.    During the training, a trainee would first ride along with a more experienced Delivery Driver to observe how the job was to be performed, according to Defendants' requirements. Then, after one or two days of observation, the trainee would driver with the trainer and be assessed, according to Defendants' requirements, as to whether they were ready or fit for the job of Delivery Driver.

55.    Plaintiffs' supervisors also monitored their work very closely throughout the day.

56.    Plaintiff Roman and all other Delivery Drivers were required to upload and submit photos documenting their deliveries throughout the day on their routing software application so that Defendants could track delivery progress and have proof of completed deliveries.

57.    If a Delivery Driver did not comply with Defendants' rigorous standards and expectations on how to perform, or if they rejected certain delivery assignments, they could be reprimanded or penalized up to and including termination.

58.    For example, upon information and belief, Delivery Drivers who made complaints about not wanting to take on a complicated route, or a route in a borough far from their homes, were terminated despite, at times, being classified as independent contractors.

59.    Delivery Drivers were also required to check-in with their managers regularly.

60.    For example, Delivery Drivers would confirm receipt of their routes the night prior with their managers, check-in with managers when they arrived for their shifts at the catering facility to load the pre-packaged meals, and check-in at the end of their route.

61.    Delivery Drivers were not able to negotiate their rate of pay with WOTB.

62.    Overall, during the period that Defendants misclassified their Delivery Drivers, nothing aside from the tax characterization of their wages, and being required to use their own vehicle, changed about the Plaintiffs' jobs. Plaintiffs were still, among other things, (i) required to accept delivery assignments or face discipline, (ii) required to send WOTB photos and updates of their routes through the routing software; (iii) required to show up early in the morning to load their own vehicles with the pre-packaged meals; (iv) call delivery recipients before arriving with their meals, (v) drop off any un-claimed meals at WOTB pre-determined locations.

## COLLECTIVE ACTION ALLEGATIONS

63.    Plaintiff Roman brings FLSA claims on behalf of himself, and other individuals similarly situated, as authorized under 29 U.S.C. § 216(b). The individuals similarly situated in the Collective are:

> **Proposed Collective:** All person who are, or have been, employed (whether classified as independent contractors or employees) by Defendants as Delivery Drivers in the United States within the period of the past three years prior to this action's filing date through the date of the final disposition of this action who worked over 40 hours in at least one workweek during the Collective Period and were not paid overtime premiums or were not provided any method or procedure for recording actual hours worked.

64.    Defendants hired Plaintiff Roman and the Collective during the Collective Period.

65.    Plaintiff Juan Roman began working for Defendants in March or April 2020 as a "Delivery Driver."

66.    All Delivery Drivers had common job descriptions and performed the same duties, namely reporting to one of the various catering warehouses to load pre-packed meals into their

vehicles for transport within Brooklyn, Queens, Staten Island or Bronx, based on a pre-assigned daily route that was assigned the night prior.

67.     Upon information and belief, at times during the Collective Period, Defendants would have Delivery Drivers who, on a daily basis, loaded vehicles with pre-packaged meals out of The Riviera Brooklyn in Coney Island, as well as a Kosher catering facility and a Latin catering facility.

68.     Then, for a period of time, the contract with The Riviera Brooklyn was replaced by a contract with The Piermont in Babylon, Long Island.

69.     During this time Plaintiff Roman, and other Delivery Drivers assigned to a route picking up meals out of The Piermont, would drive to Suffolk County, Long Island to load their vehicles with the pre-packaged meals, only to drive 30-55 miles – anywhere from 45 mins to 2 hours – back to Brooklyn, Bronx, Staten Island or Queens just to start make their deliveries for the day.

70.     Plaintiffs' general duties included reviewing the daily route assignments that were sent the evening prior and changed daily, picking up pre-packaged meals at one of the Company's pre-arranged catering venues, loading the meals into a vehicle, delivering the pre-packaged meals to the recipients, calling each recipient prior to their arrival to arrange delivery and documenting the delivery was made in the routing software.

71.     For example, Plaintiff Roman would arrive at The Riviera Brooklyn, a catering hall on Stillwell Avenue in Coney Island at approximately 2:00AM to check in with a manager and begin loading pre-packaged meals into a vehicle.

72.     If Plaintiff Roman, or any other Delivery Drivers, arrived at The Riviera Brooklyn after approximately 2:15/2:30AM, they would need to spend time waiting for others to load their

vehicles and leave the loading dock area before they could load their pre-packaged meals.

73.    All of Plaintiff Roman's daily route assignments, except for his last[1], required him to pick up the pre-packaged meals in either New York City or Long Island, New York and to deliver meals within Brooklyn, Bronx, Staten Island or Queens.

74.    Plaintiffs' routes would change daily and were sent to their phones and/or emails the evening before the assigned route.

75.    Plaintiffs could not accept or reject a route assignment without good cause and if they rejected routes without good cause they would be subjected to discipline, up to and including termination.

76.    Plaintiffs were required to utilize WOTB's routing software to track delivery details and statuses for the Company.

77.    In the event of undelivered meals, Plaintiffs were responsible for dropping such meals off at designated donation sites daily and preparing reports for donated meal counts at the end of each workday and providing those reports to supervisors.

78.    Plaintiffs were responsible for adhering to assigned routes and following the assigned time schedules.

79.    Plaintiffs were also required to adhere to all of the Company's driving and other internal policies.

**Defendants Timekeeping Policies**

80.    Irrespective of whether the Plaintiffs were classified as W2 employees or misclassified as independent contractors, the Defendants at all times, pursuant to commonly

---

[1] Plaintiff Roman's last delivery assignment was a special one-time only delivery to Fort Dix in New Jersey. Plaintiff Roman was asked specifically by management to assist with this delivery. Unfortunately, because of Plaintiff's prior criminal convictions, he was not able to enter the premises of Fort Dix to make the delivery himself. As set forth in a separate complaint, Plaintiff was unlawfully terminated from WOTB because of his criminal background.

enforced policies and practices, failed to provide Plaintiffs with any method or procedure for recording their actual hours worked.

81.     While Defendants required Plaintiffs to utilize the Company's routing software, which provided a pre-determined estimate of the time it would take for Plaintiffs to complete the entire route for the day, not inclusive of loading meals into vehicles, Defendants disregarded such estimated time, and the actual time that Plaintiffs devoted to completing their job duties, and instead paid Delivery Drivers a flat daily rate per shift.

82.     However, Plaintiffs were required to document each stop on their route within the routing software, as well as send photos documenting any drop offs within the software.

83.     There was no allotted step, or time estimate, for loading the pre-packaged meals, traveling from the pick-up location to the first stop on the route nor was this time allotted for dropping off undelivered meals.

84.     There was also no time estimate for returning back to the depot to return WOTB's rented vehicles after a route was completed, which Plaintiffs were required to do at certain points during the Collective and Class Periods.

85.     Due to traffic and the long distances Plaintiffs would, at times, be traveling, Plaintiffs would often spend at least 30 minutes to 1 hour driving from the catering facility to their first drop off location.

86.     Similarly, during certain times during the Collective and Class Periods when Plaintiffs were required to return their vehicles at the end of their shifts, Plaintiffs would spend 1 to 2 hours driving, often in heavy traffic, to return the minivans and SUVs that WOTB rented.

87.     Defendants were aware that Plaintiffs spent extra time after their last delivery traveling back to the catering facility to drop of the vehicles.

88.    In the mornings, there was always a manager present at the catering site that would see Plaintiffs arrive and check them in for the day as the Plaintiffs began the process of collecting and loading their vehicles with the pre-packaged meals.

89.    Despite knowing that Plaintiffs worked such hours in addition to those tracked in the Company's routing software, Defendants nonetheless failed to provide compensation for all of these hours and instead paid a flat daily rate, irrespective of total hours worked.

90.    Defendants did not provide Plaintiffs and others similarly situated with pay statements or other documentation that reflected the ***actual*** number of hours that Plaintiffs worked.

**Plaintiffs Worked in Excess of 40 Hours and in Excess of 10 Hours a Day**

91.    Plaintiff Roman's hours fluctuated on a week-to-week basis, depending on the number of pre-packaged meal deliveries he was assigned on a given day and the distances required to travel for each.

92.    Plaintiffs sometimes worked in excess of 40 hours per week, for which they were not paid overtime premiums.

93.    It was estimated by Defendants that a daily delivery route would take anywhere between six to eight hours to complete, not inclusive of time spent loading the pre-packaged meals each day and driving to the first delivery stop.

94.    Plaintiff Roman would regularly spend anywhere form 30 minutes to 1 hour planning out his route the evening prior in order to ensure he was efficient with his time once he started his route.

95.    Upon information and belief, other Delivery Drivers either similarly planned their routes the evening prior, or if they did not, it would take them about an hour longer to complete their routes during the day.

96.    As such, in general the total amount of working hours for each shift averaged about eight to nine hours.

97.    Thus, any week a Delivery Driver completed more than 5 shifts, he or she would have worked more than 40 hours that workweek.

98.    For example, during the pay period between July 6, 2020 and July 19, 2020, which consisted of 14 days total, Plaintiff worked 15 shifts ($3,750/$250 per shift = 15 shifts), each of which averaged approximately 8 hours per shift, totaling approximately 120 hours in a bi-weekly pay period.

99.    As such, during this pay period Plaintiff Roman estimates that he worked approximately 20 hours of overtime each week that were not compensated at time and one half his regular rate of pay.

100.    Plaintiffs also worked in excess of ten (10) hours in a day for which they were not paid spread of hours pay.

101.    For instance, on August 5, 2021, Plaintiff Roman was assigned 138[2] stops, which were "estimated" to take 11.4 hours, not inclusive of time spent at the catering warehouse loading the car with the pre-packaged meals or driving to the first delivery location. On this day, Plaintiff Roman worked more than 10 hours in the day and was not provided one-hour of additional pay at the New York minimum wage (referred to as "spread of hours pay").

102.    Similarly, on August 18, 2021, Plaintiff Roman was assigned 132 stops, which upon information and belief were estimated to take over 10 hours, not inclusive of time spent

---

[2]    Every instance where Plaintiff or a member of the putative Class or Collective has between 120 to 150 stops assigned means they were assigned a double shift, meaning they were doing the delivery work for two shifts that day. In each such instance the route assigned, including time spent loading the pre-packages meals, would require (10) or more working hours in a single day.

loading the pre-packaged meals into his car or driving to the first delivery location. Plaintiff Roman was not paid spread of hours pay for working more than ten hours this day.

103.    Plaintiff Roman regularly did double shifts, generally when someone failed to show up for their assigned route. Plaintiff Roman estimates that on the days he completed double shifts he would start work at approximately 2:30AM and not complete his deliveries until approximately 3:00PM – totaling twelve and a half hours of continuous work in a single day.

**Defendants Compensation Policies**

104.    Pursuant to a common compensation scheme Defendants compensated Plaintiffs a flat rate per routes performed in a given pay period.

105.    Upon information and belief, the flat rate of pay varied for Delivery Drivers based on length of service but ranged from $200 to $300.

106.    When Plaintiffs were classified as W2 employees, and Defendants properly covered business expenses related to tolls and gas, they were compensated, upon information and belief, $200 to $250,

107.    However, when Plaintiffs were misclassified as independent contractors, Defendants increased their pay to, upon information and belief, $300 per shift, and this increase was intended to cover both Plaintiffs' wages for labor performed and a fixed estimate for gas and tolls that did not come close to those actual costs.

108.    Despite the fact the Plaintiffs were manual workers, spending well over 25% of their time engaged in physical labor, Defendants paid Plaintiffs on a bi-weekly basis, with workweeks running from a Monday to Sunday, and checks dated eight days following the end of the two-week pay period.

109.    WOTB did not provide Plaintiffs with a breakdown of the compensation they

received that included their rate of pay, how much of the rate of pay was allotted for gas and tolls, or the number of hours worked, per bi-weekly pay period.

## **RULE 23 CLASS ALLEGATIONS**

110.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following defined class:

**Proposed Classes: 1. NYLL Overtime Class**: All persons who are or have been employed by Defendants as Delivery Drivers in New York within the period of six years prior to this action's filing date through the date of the final disposition of this action who worked at least one workweek during the Class Period *and* who during at least one workweek were subject to Defendants' common policy and practice of failing to pay overtime premium for hours worked above 40 in a workweek in violation of the NYLL.

**2. NYLL Deduction Class**: All persons who are or have been employed by Defendants as Delivery Drivers in New York within the period of six years prior to this action's filing date through the date of the final disposition of this action who worked at least one workweek during the Class Period *and* were subject to Defendants' common policy of deducting, either directly or by separate transaction, necessary work-related expenses in violation of the NYLL.

**3. NYLL Spread of Hours Class:** All persons who are or have been employed by Defendants as Delivery Drivers in New York within the period of six years prior to this action's filing date through the date of the final disposition of this action who worked at least one workweek during the Class Period *and* who during at least one workweek were subject to Defendants' common policy and practice of failing to pay spread of hours pay on days in which Delivery Drivers worked ten or more hours in one single day in violation of the NYLL.

**4. NYLL Frequency of Pay Class:** All persons who are or have been employed by Defendants as Delivery Drivers in New York within the period of six years prior to this action's filing date through the date of the final disposition of this action who worked at least one workweek during the Class Period *and* were subject to Defendants common policy and practice of not paying on a weekly basis and not later than seven calendar days after the end of the week in which the wages are earned in violation of the NYLL.

5. **NYLL WTPA Class:** All persons who are or have been employed by Defendants as Delivery Drivers in New York within the period of six years prior to this action's filing date through the date of the final disposition of this action who worked at least one workweek during the Class Period ***and*** were subject to Defendants common policy and practice of not providing lawful pay statements and/or wage notices in violation of the NYLL.

111.    Plaintiffs incorporate by reference the facts alleged in the preceding paragraphs above.

112.    Numerosity: The Proposed Classes are so numerous that joinder of all members is impracticable. Plaintiff is informed and believes, and on that basis, alleges, that during the relevant time period, Defendants employed ***at least*** forty (40) individuals who satisfy the definition of the Proposed Classes.

113.    Typicality: Plaintiff's claims are typical of the members of the Proposed Classes. Plaintiff is informed by other Delivery Drivers that the putative Class were subject to the same aforementioned unlawful policies during the Class Period. Plaintiff, and all other Delivery Drivers, was compensated in the same manner. All Plaintiffs were subject to Defendants' unlawful policies and practices alleged more fully above.

114.    Superiority: A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

115.    Adequacy: Plaintiff will fairly and adequately protect the interests of the Proposed Classes and has retained counsel experienced in complex FLSA and NYLL class and collective action litigation.

116.    Commonality: Common questions of law and fact exist to all members of the Proposed Classes and predominate over any questions solely affecting individual members of the Proposed Classes, including but not limited to:

a.   Whether members of the Proposed Classes were required to work under Defendants' direction and control;

b.   Whether Defendants improperly classified members of the Proposed Classes as "independent contractors" instead of "employees" within the meaning of NYLL;

c.   Whether Defendants unlawfully failed to pay appropriate overtime compensation to members of the NYLL Overtime Class in violation of the NYLL;

d.   Whether Defendants took deductions, directly or indirectly, for business-related expenses from the proposed NYLL Deduction Class members' pay in violation of the NYLL;

e.   Whether Defendants unlawfully failed to pay spread of hours pay to members of the NYLL Spread of Hours Class in violation of the NYLL;

f.   Whether Defendants unlawfully failed to pay spread of hours pay to members of the NYLL Spread of Hours Class in violation of the NYLL;

g.   Whether Defendants unlawfully failed to pay members of the NYLL Frequency of Pay Class on a weekly basis in violation of the NYLL;

h.   Whether Defendants failed to provide proper WTPA notices and pay statements to the NYLL WTPA Class members in violation of the NYLL;

i.   Whether Defendants maintained lawful wage and hour records under the NYLL;

j.   Whether Defendants' actions were "willful" under the NYLL.

117.   This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the classes would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendants. Further, adjudication of each individual member's claim as a separate action would be dispositive

of the interest of other individuals not party to this action, impeding their ability to protect their interests.

118.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the proposed Classes predominate over any questions affecting only individual members of the proposed Classes and because a class action is superior to other available methods for their fair and efficient adjudication of this litigation.

119.    Defendants' uniform policies and practices denied the proposed Classes the wages to which they are entitled to, including overtime pay and spread of hours pay. The damages suffered by the individual members of the proposed Classes are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior, because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

120.    Plaintiff Roman intends to send notice to all members of the proposed Classes to the extent required by Rule 23. The names and addresses of the members of the proposed Classes will be available from Defendants.

121.    Defendants did not reimburse, or otherwise made direct deductions, from Plaintiffs' compensation for business-related expenses that were for the benefit of their employer, such as the cost gas, car insurance, parking tickets received while making deliveries, cell phone charges incurred in using the Company's routing software to fulfil catering orders, all resulting in unlawful deductions from Plaintiffs' wages.

122.    For example, on Plaintiff Roman's December 28, 2020, paycheck shows, in the "Deductions" column that year to date his pay was docked $332 in "Ticket" charges and $800 in "Insurance" charges.

123.    Defendants also did not provide Plaintiffs with wage notices at the time of hire, nor did their wage statements contain an accurate a breakdown of the number of actual hours worked within each pay period or the actual rate of pay, as required by the WTPA.

124.    Finally, Defendants did not pay Plaintiffs, who are manual workers, on a weekly basis and no more than seven calendar days after the end of the week in which the wages are earned, as required by the NYLL.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Fair Labor Standards Act: Unpaid Overtime Wages)

125.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

126.    Plaintiff Roman consents in writing to be a part of this action, pursuant to 20 U.S.C. § 216(b). Plaintiff Roman's written consent form is filed contemporaneously on the Court's docket with this Action. Plaintiff Roman anticipates that as this case proceeds, other individuals will sign consent forms and join as party plaintiffs under the FLSA.

127.    At all relevant times, each of the Defendants constitute Plaintiffs' "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 20 U.S.C. § 203.

128.    At all relevant times herein, Plaintiff Roman and the members of the proposed Collective have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

129.    At all relevant times, upon information and belief, Defendants' gross revenue has exceeded $500,000.00.

130.    The FLSA requires each covered employer such as Defendants to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for

work performed in excess of forty hours per work week.

131.    During their employment with Defendants, within the applicable statute of limitations, Plaintiff Roman and other members of the Collective sometimes worked in excess of forty hours per workweek without overtime compensation.

132.    Despite the hours worked by Plaintiff Roman and the Collective, Defendants willfully, in bad faith, and in knowing violation of the FLSA, failed and refused to pay them overtime compensation.

133.    Based on the policies and practices articulated above, Plaintiff Roman and the members of the Collective were uniformly denied FLSA mandated overtime premiums.

134.    Also, by failing to accurately record, report, and/or preserve records of hours worked by Plaintiff Roman and the Collective, Defendants have failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions and practices of employment, in violation of the FLSA.

135.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. §§ 216(b) and 255(a).

136.    Because Defendants' violations of the FLSA are willful, a three-year statute of limitation applies. 29 U.S.C. § 255.

137.    Plaintiff Roman, on behalf of himself and the Collective seeks the recovery of attorneys' fees and costs to be paid by Defendants provided by the FLSA, 29 U.S.C. § 216(b).

**AS AND FOR A SECOND CAUSE OF ACTION**
**(New York Labor Law: Unpaid Overtime Wages)**

138.    Plaintiff alleges and incorporate by reference the allegations in the preceding paragraphs.

139.    At all relevant times herein, Plaintiff Roman and the proposed NYLL Overtime

Class Members have been entitled to the rights, protections, and benefits provided under the NYLL.

140.    At all relevant times herein, each of the Defendants has been an employer within the meaning of the NYLL.

141.    The overtime wage provisions of Article 19 of the NYLL, and its supporting regulations, applies to Defendants.

142.    Defendants have failed to pay Plaintiff Roman and the putative NYLL Overtime Class the overtime wages they are entitled to under the NYLL.

143.    By Defendants' failure to pay Plaintiff Roman and the putative NYLL Overtime Class premium overtime wages for hours worked in excess of 40 hours per week, they have willfully within the meaning of N.Y. Lab. Law §663 violated N.Y. Lab. Law Article 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. Part 142.

144.    Due to Defendant's violation of the NYLL, Plaintiff Roman and the NYLL Overtime Members are entitled to recover from Defendants their unpaid overtime wages, reasonable attorney's fees and costs of the action, and pre-judgment and post-judgment interest.

### AS AND FOR A THIRD CAUSE OF ACTION
**(New York Labor Law: Failure to Pay Spread of Hours)**

145.    Plaintiffs allege and incorporates by reference the allegations in the preceding paragraphs.

146.    At all relevant times herein, Plaintiff Roman and the members of the putative NYLL Spread of Hours Class have been entitled to the rights, protections, and benefits provided under the NYLL.

147.    At all relevant times herein, Plaintiff Roman and the members of the putative

NYLL Spread of Hours Class have been entitled to the rights, protections, and benefits provided under the NYLL.

148.    Plaintiff Roman and the NYLL Spread of Hours Class members regularly had workdays that lasted more than ten (10) hours in a single day.

149.    Defendants willfully and intentionally failed to compensate Plaintiff Roman and the NYLL Spread of Hours Class one hour pay at the New York minimum hourly wage rate when their workdays exceeded ten (10) hours, as required by New York law.

150.    As a result of Defendants willful and unlawful conduct Plaintiff Roman and members of the NYLL Spread of Hours Class are entitled to an award of damages, including liquidated damages, in an amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by NYLL § 663.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (New York Labor Law: Unlawful Wage Deductions)

151.    Plaintiffs alleges and incorporates by reference the allegations in the preceding paragraphs.

152.    At all relevant times herein, Plaintiff Roman and the members of the putative NYLL Deduction Class have been entitled to the rights, protections, and benefits provided under the NYLL.

153.    At all relevant times, Defendants have been an employer within the meaning of the NYLL.

154.    The provisions related to the failure to reimburse business-related expenses of Article 19 of the New York Labor Law and its supporting regulations apply to Defendants.

155.    Section 193 prohibits deductions from employees' wages unless the deductions are expressly authorized and for the benefit of the employee and limited to the enumerated categories

of permissible deductions.

156.     Defendants unlawfully took direct deductions from Plaintiff Roman and members of the NYLL Deduction Class' compensation by deducting from their pay, among other things, the costs associated with car insurance and parking violations incurred during the course of the workday, in violation of NYLL §§ 193 and 198(b).

157.     Defendants also unlawfully required that Plaintiff and the NYLL Deduction Class bear the expenses of their employment, including but not limited to the cost of their gas, car expenses, and cell phone charges, in violation of NYLL §§ 193 and 198(b).

158.     As a result of Defendants' unlawful conduct, Plaintiff Roman and the putative NYLL Deduction Class are entitled to an award of damages equal to all wages unlawfully deducted and all unlawful payments required by separate transaction, in an amount to be determined at trial, plus pre- and post-judgment interest, costs and attorneys' fees, as provided by NYLL § 663.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (New York Labor Law: Failure to Furnish Accurate Wage Statements)

159.     Plaintiffs alleges and incorporates by reference the allegations in the preceding paragraphs.

160.     At all relevant times, Plaintiff and the members of the putative NYLL WTPA Class have been entitled to the rights, protections, and benefits provided under the NYLL.

161.     At all relevant times, Defendants has been an employer within the meaning of the NYLL.

162.     The record-keeping provisions of Article 19 of the New York Labor Law and its supporting regulations applies to Defendants.

163.     Defendants did not provide Plaintiff and the putative NYLL WTPA Class with a legally sufficient wage statement upon the payment of wages, as required by NYLL § 195(3).

164.    NYLL §195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria required under the NYLL.

165.    As a result of Defendants' unlawful conduct, Plaintiff and the putative NYLL WTPA Class are entitled to an award of damages pursuant to NYLL § 198, in an amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by NYLL § 663.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**(New York Labor Law: Failure to Furnish Wage Notices)**

166.    Plaintiffs alleges and incorporates by reference the allegations in the preceding paragraphs.

167.    At all relevant times, Plaintiff and the members of the putative NYLL WTPA Class have been entitled to the rights, protections, and benefits provided under the NYLL.

168.    At all relevant times, Defendants has been an employer within the meaning of the NYLL.

169.    The record-keeping provisions of Article 19 of the New York Labor Law and its supporting regulations applies to Defendants.

170.    Defendants did not provide Plaintiff and the NYLL WTPA Class with wage notices at the start of their employment, as required by NYLL § 195.

171.    NYLL §195 requires that employers furnish employees with wage notices containing accurate, specifically enumerated criteria required under the NYLL.

172.    As a result of Defendant's unlawful conduct, Plaintiff and the putative NYLL WTPA Class are entitled to an award of damages pursuant to NYLL § 198, in an amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by NYLL § 663.

## AS AND FOR A SEVENTH CAUSE OF ACTION
**(New York Labor Law: Frequency of Pay Violation)**

173.    Plaintiffs allege and incorporates by reference the allegations in the preceding paragraphs.

174.    At all relevant times, Plaintiff and the members of the putative NYLL Frequency of Pay Class have been entitled to the rights, protections, and benefits provided under the NYLL.

175.    At all relevant times, Defendants has been an employer within the meaning of the NYLL.

176.    Plaintiffs and the NYLL Frequency of Pay Class were manual workers, as defined by the NYLL.

177.    Plaintiffs and the NYLL Frequency of Pay Class were entitled to be paid on a weekly basis and no later than seven days after the workweek in which the wages were earned.

178.    Defendants willfully failed to pay the Plaintiffs and the putative NYLL Frequency of Pay Class as frequently as required by NYLL § 191.

179.    Defendants willfully failed to pay wages to the Plaintiffs and the putative NYLL Frequency of Pay Class within seven days after the end of each workweek in which wages were earned as required by NYLL § 191.

180.    Due to the Defendants violations of the NYLL, Plaintiffs and the members of the NYLL Frequency of Pay Class are entitled to recover from Defendants liquidated damages, reasonable attorneys' fees and costs, and pre- and post-judgement interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Roman, on behalf of himself and all members of the Proposed Collective and Classes, prays for relief as follows:

A.     That the Court determine that this action may proceed as a collective action pursuant to 29 U.S.C. § 216 and a class action under Rule 23(b)(1) and (3) of the Federal Rules of Civil Procedure;

B.     That the Court determine that Plaintiff's counsel and Plaintiff Juan Roman can adequately represent the interests of the class as class counsel and class representatives, respectively;

C.     That the Court declare that Defendants have violated the Fair Labor Standards Act as to Plaintiff Roman and the putative Collective;

D.     That the Court declare that the Defendants have violated the provisions of the New York Labor Law as to Plaintiff Roman and putative Classes;

E.     That the Court declare that Defendants' violations as described above are found to be willful;

F.     That the Court award Plaintiff Roman and the putative Collective and Classes for the amount of unpaid wages owed, including interest thereon, and penalties, including liquidated damages, subject to proof at trial;

G.     That the Court award reasonable attorney's fees and costs pursuant to the NYLL and 29 U.S.C. § 216(b) and/or other applicable law;

H.     That the Court enjoin Defendants to cease and desist from unlawful activities in violation of the FLSA and the NYLL; and

I.     For such other and further relief, in law or equity, as this Court may deem appropriate and just.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff on behalf of

himself and all other similarly situated persons demand a trial by jury as to all issues so triable.

DATED:        November 18, 2021
              New York, New York


_____
Christopher Q. Davis, Esq.
Rachel M. Haskell, Esq.
The Law Office of Christopher Q. Davis
80 Broad Street, Suite 703
New York, New York 10004
(646)-430-7930 (main)
(646)-349-2504 (fax)

*Counsel for Plaintiff and the Putative Collective
and Class(es)*