UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JUAN ROMAN, DARIEL ALMONTE, JOSHUA
BAILEY, and JOSE SANDOVAL, *individually and
on behalf of all others similarly situated*,

                        Plaintiffs,

                -against-

WHEELS ON THE BUS INCORPORATED, JAMES
COHEN, and ALVIN CHAMORRO,

                       Defendants.
-------------------------------------------------------------------X

**ORDER**
21-cv-6377-SJB

**BULSARA, United States Magistrate Judge:**

       On November 12, 2024, Plaintiffs Juan Roman, Dariel Almonte, Joshua Bailey, and Jose Sandoval (collectively, the "Named Plaintiffs") filed two motions in this case brought against Defendants Wheels on the Bus, Incorporated, James Cohn, and Alvin Chamorro (collectively "WOTB" or "Defendants"). The first is a motion for final approval of the settlement of a collective action resolving Fair Labor Standards Act ("FLSA") claims, as required by *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), and a class action settlement, as required by Federal Rule of Civil Procedure 23(e), resolving claims brought pursuant to the New York Labor Law ("NYLL"). (Mot. for Settlement Approval dated Nov. 12, 2024 ("Settlement Approval Mot."), Dkt. No. 90). The second motion seeks an award of attorney's fees and costs. (Mot. for Att'y Fees dated Nov. 12, 2024 ("Fees and Costs Mot."), Dkt. No. 93). On November 19, 2024, the Court held a final fairness and approval hearing on the settlement. (Min. Entry and Order dated Nov. 19, 2024). For the reasons stated below, the motions are granted.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Roman, a former delivery driver for Defendants, filed this action on November 18, 2021, on behalf of himself and similarly situated delivery drivers who are or have been employed by WOTB in the previous three to six years and whose work consisted of providing meal delivery services for New Yorkers facing food insecurity as part of the GetFoodNYC program. (Compl. dated Nov. 18, 2021, Dkt. No. 1). An Amended Complaint was later filed and became the operative pleading. (Amend. Compl. dated July 15, 2022 ("Complaint"), Dkt. No. 31). The Complaint alleges that Defendants failed to pay their delivery drivers overtime compensation, made unlawful deductions from wages, and engaged in other statutory violations of the FLSA and NYLL. (*Id.* ¶¶ 4–5). On July 10, 2023, the parties reached a settlement during a settlement conference with the Court. (Minute Entry and Order dated July 10, 2023).

After consenting to Magistrate Judge jurisdiction, the parties filed a joint motion for preliminary approval. (Mot. for Preliminary Approval dated Oct. 16, 2023, Dkt. No. 73). The Court denied the initial motion. (Minute Entry and Order dated Nov. 21, 2023). The parties then filed a revised motion. (Mot. for Preliminary Approval dated Jan. 12, 2024 ("Prelim. Settlement Mot."), Dkt. No. 79; *see* Settlement Agreement and Notice, attached as Ex. 1 to Decl. of Rachel M. Haskell in Supp. of Mot. for Preliminary Approval dated Jan. 12, 2024 ("Jan. 2024 Haskell Decl."), Dkt. No. 80-1). Supplemental briefing was filed on May 8, 2024. (Suppl. Br. in Supp. of Mot. for Preliminary Approval dated May 8, 2024 ("Suppl. Br."), Dkt. No. 85). On June 12, 2024, Plaintiffs' counsel corrected a typographical error in the document. (Letter from Pls. to the Court dated June 12, 2024 ("June 2024 Letter"), Dkt. No. 87). And on July 18, the Court granted the

motion for preliminary settlement approval.  (Order granting Preliminary Approval dated July 18, 2024 ("Preliminary Approval Order"), Dkt. No. 88).

The settlement is a hybrid class and collective action settlement; it contemplates two procedural vehicles operating simultaneously: (a) a class action settlement, pursuant to Federal Rule of Civil Procedure 23, resolving NYLL claims; and (b) a collective action settlement to resolve FLSA claims.  The class action members (the "NYLL Class Members") are all present and former persons employed as delivery drivers by Defendants between June 30, 2019, through June 30, 2023.  (Settlement Agreement, attached as Ex. 2 to June 2024 Letter, Dkt. No. 87-1 ¶ 1.4).  The members of the FLSA collective (the "FLSA Collective Members") are all persons employed as delivery drivers by Defendants between June 30, 2019, and June 30, 2023.  (*Id.* ¶¶ 1.4, 1.13).

To participate in the FLSA collective, employees who were not already named or opt-in plaintiffs—by the date of the preliminary approval order—were required to affirmatively consent or "opt-in" to the collective.  (*Id.* ¶ 1.27.1).  Employees who chose not to opt-in retained their rights to bring their own FLSA claims.  (*Id.* ¶ 2.7.7).  Rule 23 class actions brought under the NYLL do not require the affirmative consent of class members.  Employees therefore needed to affirmatively opt-out in order to be excluded from the NYLL class settlement and avoid being bound by the final judgment.[1]  (*Id.* ¶ 2.7).  To participate in the settlement award, NYLL Class Members had to submit a claim form to collect their NYLL settlement share, and/or a consent to join form to collect their FLSA settlement share.  (*Id.* ¶ 2.76–2.7.7).  In the end, employees receiving

---

[1] *See Marichal v. Attending Home Care Servs., LLC*, 432 F. Supp. 3d 271, 279 (E.D.N.Y. 2020) ("[T]he affirmative assent of each opt-in plaintiff—as a party to the case—is required [to settle his claims].").

FLSA settlement shares will be: (1) the Named Plaintiffs; (2) earlier opt-ins who signed the settlement agreement; and (3) any employees who timely submitted a consent to join form. (Settlement Agreement ¶ 1.27.1). Employees receiving NYLL settlement shares will be: (1) the Named Plaintiffs; (2) earlier opt-ins who signed the settlement agreement; and (3) any employees who timely submitted a claim form. (*Id.* ¶ 1.27.2).

The Gross Settlement Amount, before the provision of attorney's fees, costs, or service awards, is a fund of $1,275,000. (Settlement Agreement ¶ 3.1). As further detailed below, after subtracting attorney's fees, costs, and service awards, the Net Settlement Amount of $825,000 provides for a total (1) FLSA Settlement Share of $191,139.31, inclusive of $88,912.32 for overtime claims, allocated on a pro rata basis based on duration of employment, plus 100% of liquidated damages and 14.975% interest; and (2) NYLL Settlement Share of $237,986.44, inclusive of $72,573.90 for unlawfully deducted wages, plus 100% of liquidated damages and 14.975% interest, and $81,970.70 for wage statement claims, allocating a monthly value of about $100 per month based on the number of months worked. (*Id.* ¶ 3.4.3; Nov. 2024 Letter at 2).

The settlement agreement also provides for reversion to Defendants of: (1) up to 50% of the Net Settlement Fund (or $425,000); and (2) any uncashed checks. (Settlement Agreement ¶¶ 3.4.6, 3.4.7). Here, the unclaimed funds will result in a reversion to Defendants of $351,319.50 from the Net Settlement Fund. (Decl. of Rachel M. Haskell in Supp. of Mot. for Settlement Approval dated Nov. 12, 2024 ("Nov. 2024 Haskell Settlement Decl."), Dkt. No. 91 ¶ 116).

On September 11, 2024, notices with information about the settlement were sent via first class U.S. mail to the 441 eligible employees. (Decl. of Dana Boub dated Nov. 12, 2024 ("Boub Decl."), attached as Ex. D to Decl. of Rachel M. Haskell in Supp. of Mot.

for Att'y Fees dated Nov. 12, 2024 ("Nov. 2024 Haskell Fees Decl."), Dkt. No. 94-4 ¶¶ 4–6). The notice was also emailed to anyone whom the parties had email addresses for, and a short form notice was texted to anyone the parties had a cell phone number for. (*Id.* ¶¶ 7–8). The notice alerted putative FLSA Collective Members that the only way to receive the FLSA Settlement Share was to submit a consent form to join the collective. (Notice attached as Ex. A to Claims Admin. Decl., Dkt. No. 94-4). NYLL Class Members were advised they were considered part of the class if they did not opt-out, but nonetheless needed to submit a claim form to receive a NYLL Settlement Share. (*Id.*). Employees were also told how they could exclude themselves from the settlement agreement by filing an opt-out statement or, if they remained in the class, how they could object to the settlement by writing to the Court. (*Id.*).

Of the 441 mailed notice packets, 41 were initially returned by the United States Postal Service as undeliverable. (Boub Decl. ¶ 10). For those 41 individuals, an advanced address search was performed and 33 were re-mailed using updated information; none of the re-mailed notices were returned as undeliverable. (*Id.*; Nov. 2024 Letter at 1). Of the 8 remaining undeliverable notices, only 2 class members were not able to be notified through mail, email, or text message. (Boub. Decl. ¶ 10).

The Court concludes that the notices fairly and adequately advised putative class and collective members of the nature of the action, a description of the action, the right of class members to exclude themselves from the settlement, the right of class members to object to the settlement, the right of collective members to file consent to join forms to receive their FLSA Settlement Share, the right of class members to file claim forms to receive their NYLL Settlement Shares, the right of class and collective members to be represented by their own counsel, and the right of class and collective members to

5

appear at the final fairness hearing. Class and collective members were provided the best notice practicable under the circumstances. The Court therefore concludes that the notices and distribution of the notices complied with Fed. R. Civ. P. 23 and FLSA.

On November 12, 2024, the Plaintiffs filed unopposed motions for final settlement approval and attorney's fees. (Settlement Approval Mot.). The Court held the final fairness hearing on November 19, 2024. (Minute Entry and Order dated Nov. 19, 2024). Counsel for Plaintiffs and Defendants were present. (*Id.*). No class or collective members attended the hearing, nor did any indicate a desire to be heard.

In all, there are 155 settlement class members, *i.e.*, 35.31% of the 441 identified employees have submitted claim forms seeking to participate in both the NYLL Settlement and FLSA Settlement. (Mem. of Law in Supp. of Mot. for Settlement Approval dated Nov. 12, 2024 ("Settlement Approval Mem."), Dkt. No. 92 at 14, 32). There were no objections to the settlement and only one class member chose to opt-out of the class action settlement by submitting a request for exclusion. (Settlement Approval Mem. at 14).

Plaintiffs' counsel requests an award of $385,000 for attorney's fees and an award for expenses and costs not to exceed $40,000. (Mem. of Law in Supp. of Mot. for Att'y Fees dated Nov. 12, 2024 ("Fee and Cost Mem."), Dkt. No. 95 at 21; Settlement Agreement ¶ 3.2).

## DISCUSSION

I.     Final Collective Action Approval

A settlement that disposes of FLSA claims with prejudice must be approved by the Court. To approve such a settlement, the Court must find that the agreement is fair,

*i.e.*, that it "reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing, USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (internal quotations and citations omitted); *see also Cheeks*, 796 F.3d at 207 (requiring court approval in FLSA actions "to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees.").

In determining whether a FLSA settlement is fair, the Court considers:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335–36 (S.D.N.Y. 2012)); *see also Cheeks*, 796 F.3d at 206.

    A.  <u>Range of Recovery</u>

As the Court previously found in granting preliminary approval, the settlement agreement provides the collective members with a recovery that is substantial and fair, particularly in light of the litigation risks faced by both parties. (Preliminary Approval Order ¶¶ 23, 32–33).

Counsel estimates that each collective member will receive an average of approximately $0.31 for each dollar of allegedly unpaid overtime wages. (Settlement Approval Mem. at 11). The range of recovery is between $0.19 and $0.52 for each dollar of allegedly unpaid overtime wages. (*Id.*). As a result of the 155 claims submitted, the

7

final FLSA award will be $191,139.31, including (1) $88,912.32 in Overtime Payment; (2) $88,912.32 in liquidated damages on the Overtime Payment; and (3) $13,314.67 in interest. (Nov. 2024 Letter at 2).

The FLSA portion of the settlement—which essentially compensates employees for unpaid overtime—is, on average, 31% of the value of each employee's alleged lost overtime wages. (Data on Range of Recovery, attached as Ex. 4 to Suppl. Br., Dkt. No. 85-4).

Considering the significant litigation risks Plaintiffs face, these percentages represent a recovery that is fair and reasonable. Other FLSA settlements with similar percentages of recovery have been approved by courts in this Circuit. *See, e.g.*, *Rodriguez-Hernandez v. K Bread & Co., Ins.*, No. 15-CV-6848, 2017 WL 2266874, at *4 (S.D.N.Y. May 23, 2017) (approving a settlement of 26% of potential damages given "bona fide disputes" between the parties and litigation risks).

B. Scope of the Waiver

The release in the settlement agreement is limited in scope and is not a barrier to settlement approval. The employees who participated in the collective agreed to release their potential FLSA claims, and those who do not submit claim forms will only release their NYLL claims; the waiver is not a general release of all possible claims against Defendants. (Settlement Agreement ¶¶ 4.1, 4.2). Given the narrow release in the settlement agreement, the Court finds that this portion of the settlement is appropriate.

C. Other Provisions

The Court has examined the reversion in the settlement for signs of potential overreaching. The total amount of the reversion is $351,319.50, reflecting 28% of the Gross Settlement Amount and 43% of the Net Settlement Amount. (*See* Nov. 2024

8

¶ 116). This amount is significant. However, in light of the substantial recovery that collective members will be receiving (31%), the Court finds that the reversion does not detract from the overall fairness of the settlement or preclude approval. *See, e.g.*, *Douglas v. Allied Universal Sec. Servs.*, No. 17-CV-6093, 2020 WL 6323691, at *2, *4 (E.D.N.Y. May 6, 2020) (approving settlement where up to 20% of amount allocated to FLSA collective could revert to defendants).

In light of the foregoing, the Court concludes that the *Fisher* factors have been satisfied and the settlement is consistent with *Cheeks*. The settlement provides collective members with a meaningful recovery, particularly given the complexity of the case and significant litigation risk; the release provision is sufficiently tailored; and no aspect of the agreement strikes the Court as unreasonable or unfair. The Court therefore grants final approval of the FLSA settlement.

II.     Final Approval of NYLL Class Action

Under Federal Rule of Civil Procedure 23(e), "claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval." Courts may approve class action settlements where the settlement is found to be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Peoples v. Annucci*, 180 F. Supp. 3d 294, 307 (S.D.N.Y. 2016). "To determine whether a settlement is fair, reasonable, and adequate, the Second Circuit instructs district courts to examine 'the negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.*, substantive fairness.'" *Stinson v. City of New York*, 256 F. Supp. 3d 283, 288 (S.D.N.Y. 2017) (quoting *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803–04 (2d Cir. 2009)). In making this determination, courts in the Second Circuit consider the nine "*Grinnell*" factors outlined in *City of Detroit v.*

9

*Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

(internal citations omitted).

Each employee's share of the NYLL settlement is comprised of (1) 100% of any actual deductions taken from the employee's wages (the "Wage Payment"), from a fund of $122,210.07; (2) 100% of liquidated damages on the Wage Payment; (3) 14.975% of the Wage Payment in interest; and (4) a "Wage Statement Payment," allocated on a pro rata basis from a fund of $175,000, based on the length of employment. (Settlement Agreement ¶ 3.4.3). The total NYLL claims result in a final NYLL award of $237,986.44, inclusive of (1) $72,573.90 in Wage Payments; (2) $72,573.90 in liquidated damages on the Wage Payment; (3) $10,867.94 in interest; and (4) $81,970.70 in Wage Statement Payments. (Nov. 2024 Letter at 2).

For the reasons stated in the Court's Preliminary Approval Order and the rationale for final approval of the collective action settlement, the Court finds that the NYLL class settlement should also be approved. The bulk of the NYLL claims relate to unlawful deductions from earned wages, which will be recovered in full, plus liquidated damages and pre-judgment interest, resulting in a substantial settlement payment for each class member.[2] As such, the reversionary provision does not preclude the Court

---

[2] The Court also awards service payments to Juan Roman in the amount of $15,000; Joshua Bailey in the amount of $5,000; Dariel Almonte in the amount of

from concluding that the settlement is fair, reasonable and adequate. *E.g.*, *Hart v. RCI Hosp. Holdings, Inc.*, No. 9-CV-3043, 2015 WL 5577713, at *12-*13 (S.D.N.Y. Sept. 22, 2015) (approving NYLL class action despite only 40% participation rate and possibility that reversionary portion could be redistributed, in light of litigation risks and substantial recovery for participating class members); *Rosario v. Valentine Av. Disc. Store, Inc.*, No. 10-CV-5255, 2016 WL 11671338, at *6 (E.D.N.Y. Mar. 3, 2016) (collecting reversionary NYLL class settlements approved in Second Circuit), *report and recommendation adopted*, (Order dated Mar. 25, 2016).

III.    Attorney's Fees and Costs

The motion for attorney's fees requests fees of $385,000, and costs of up to $40,000. (Fees and Costs Mot. at 21). These fees and costs will be paid in addition to the amounts paid to employees who participate in the settlement. While considerable, the Court approves the fee and cost request. *See* 29 U.S.C. § 216(b) ("The court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.").

The Court finds the attorney's fees and costs sought to be reasonable and commensurate with the degree of success obtained. *See Fisher*, 948 F.3d at 606–07.

---

$2,500; and Jose Sandoval in the amount of $2,500. (Settlement Agreement ¶ 3.3). These payments are allocated from the Gross Settlement Amount. The Named Plaintiffs participated in the litigation by assisting with the preparation of the Complaint, providing and reviewing evidence, and attending mediation and settlement conferences. (Jan. 2024 Haskell Decl. ¶¶ 75–81; Settlement Approval Mem. at 19–20). The payments are reasonable in light of these efforts by the Named Plaintiffs to further the employees' interests, and are appropriately allocated based on the efforts provided on behalf of the class. *Moses v. N.Y. Times Co.*, 79 F.4th 235, 253–55 (2d Cir. 2023) ("[I]ncentive awards often level the playing field and treat differently situated class representatives equitably relative to the class members who simply sit back until they are alerted to a settlement. . . . We decline to depart from Rule 23's mandate, which permits fair and appropriate incentive awards.").

11

The amount of requested attorney's fees and costs equals one-third of the settlement fund of $1,275,000. (*See* Settlement Agreement ¶¶ 3.1, 3.2). While the total amount sought—$425,000—is substantial, it is in line with the success obtained. *Supra* at 7–8.

Regardless of whether the settlement operates as a claims-made settlement or common fund, *i.e.*, whether the settlement pays attorney's fees from funds that would otherwise be paid to class members, (Preliminary Approval Order ¶ 28), "the Court is not compelled to use the percentage [of recovery] approach and can simply apply the lodestar," to determine the reasonableness of the fee. *In re Canon U.S.A. Data Breach Litig.*, No. 20-CV-6239, 2024 WL 3650611, at *4 (E.D.N.Y. Aug. 5, 2024); *see also Allen v. Taylor*, 795 F. App'x 79, 80 (2d Cir. 2020) ("It is up to the district court, rather than counsel, to choose whether to use the lodestar or percentage methods. . . . [W]e have held that it is within a district court's discretion to use the lodestar method alone[.]"); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 ("[C]ourts may continue to use the lodestar approach alone in calculating attorneys fees in common fund cases."); *Jermyn v. Best Buy Stores, L.P.*, No. 08-CV-214, 2012 WL 2505644, at *9 (S.D.N.Y. June 27, 2012) (applying lodestar approach to claims-made settlement).

Here, the lodestar supports approval of counsel's requested fee. *Hart v. BHH, LLC*, No. 15-CV-4804, 2020 WL 5645984, at *9 (S.D.N.Y. Sept. 22, 2020) (the lodestar and multiplier can also operate as the main test for the fee award). Courts applying the lodestar method to determine attorney's fees generally apply a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved. *Parker v. Time Warner Ent. Co., L.P.*, 631 F. Supp. 2d 242, 264 (E.D.N.Y. 2009); *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, at *24 (S.D.N.Y. Nov. 26, 2002). The hourly rates used by counsel are

comparable to rates charged by attorneys with similar experience, skill, and reputation, for similar services in the New York legal market and in line with what is awarded in this District.³ The requested fee award—$385,000—reflects approximately a two times multiplier for counsel's lodestar of $190,000. (Nov. 2024 Haskell Fees Decl. ¶ 6). This multiplier is well within the accepted range in this Circuit. *See Asare v. Change Group of New York, Inc.*, No. 12-CV-3371, 2013 WL 6144764, at \*19 (S.D.N.Y. Nov. 18, 2013) ("Typically, courts use multipliers of 2 to 6 times the lodestar."); *Spicer v. Pier Sixty LLC*, 08-CV-10240, 2012 WL 4364503, at \*4 (S.D.N.Y. Sept. 14, 2012) ("The attorneys' fees awarded are a 3.36 multiplier of lodestar, which is well within the range of reasonableness."); *Lloyd's*, 2002 WL 31663577, at \*27 ("[T]he resulting multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit.").

The Court therefore approves the $385,000 fee and up to $40,000 cost request.⁴

---

³ Plaintiffs' counsel and support staff spent a combined total of 513 hours on this litigation and used an hourly rate ranging from $400–$500 for each of the three senior partners involved (Rachel Haskell, Brendan Sweeney, and Christopher Davis); an hourly rate ranging from $375–$400 for two attorneys who performed more limited work on this matter (Estee Ward and Nicholas Bittner); and an hourly rate of $100 for law clerks and paralegals. (Nov. 2024 Haskell Fees Decl. ¶¶ 9–32; Fees and Costs Mot. at 32). Those hourly rates are consistent with rates for lawyers in EDNY wage-and-hour class and collective actions. *See Cotton v. NY Minute Movers, Inc.*, No. 20-CV-6153, 2023 WL 2499132, at \*2 (E.D.N.Y. Mar. 14, 2023) ("Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases.") (quoting *Diaz v. Rene French Cleaners, Inc.*, No. 20-CV-3848, 2022 WL 4646866, at \*13 (E.D.N.Y. Aug. 29, 2022), *report and recommendation adopted*, 2022 WL 4662247, at \*1 (Sept. 30, 2022)); *Am. Home Energy Inc. v. AEC Yield Capital LLC*, No. 21-CV-1479, 2024 WL 2787064, at \*20–\*22 (E.D.N.Y. May 30, 2024) (granting hourly rate of $500–$550 for partners, $250–$325 for associates and staff attorneys, and $175 for paralegals in FLSA case), *report and recommendation adopted*, 2024 WL 3401736, at \*1 (June 21, 2024).

⁴ Counsel has indicated that the anticipated costs, which include $20,000 in claims administration costs for administering notice and settlement checks, are

CONCLUSION

For the reasons explained above, the Court grants the motions and finds that:

1. The FLSA settlement satisfies the requirements of *Cheeks* and its progeny; and

2. The NYLL class action settlement is fair, reasonable, and adequate, and satisfies the requirements of Rule 23(e); and

3. Plaintiffs' counsel is entitled to an award of $385,000; and

4. Plaintiffs' counsel is entitled to an amount not to exceed $40,000 for costs and expenses, including but not limited to the claims administration fees; and

5. Juan Roman is entitled to a service payment of $15,000; Joshua Bailey is entitled to a service payment of $5,000; Dariel Almonte is entitled to a service payment of $2,500; and Jose Sandoval is entitled to a service payment of $2,500.

The Clerk of Court is directed to enter judgment consistent with this Order and to close this case.

SO ORDERED.

*/s/ Sanket J. Bulsara* December 17, 2024
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York

---

approximately $40,000 total. (Jan. 2024 Haskell Decl. ¶ 70). These costs have been adequately documented. (Expense Report dated Jan. 12, 2024, attached as Ex. 2 to Jan. 2024 Haskell Decl.).

14